IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| IN RE:<br><br>**ALPHA PROTECTIVE SERVICES, INC.**,<br><br>    Debtor,<br>_____<br><br>**NEIL C. GORDON**, as Trustee in Bankruptcy for Alpha Protective Services, Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>**JAMES LEE HARRISON**, *et al.*,<br><br>    Defendants. | Case No. 7:14-MC-1 (HL) |

## ORDER

Before the Court is the Motion to Withdraw the Reference (Doc. 1) by Defendants James Lee Harrison, Harrison Management and Consulting Group, LLC, and Gary L. Harrison (collectively "Defendants"). Defendants ask this Court to withdraw the reference for an adversary proceeding currently pending against them in the United States Bankruptcy Court for the Middle District of Georgia ("Bankruptcy Court"). If the reference were withdrawn pursuant to 28 U.S.C. § 157(d), as Defendants request, then the adversarial proceeding against them would be carried out in this Court. Neil Gordon ("Trustee"), as the trustee in the

bankruptcy proceeding for Alpha Protective Services, Inc. ("Debtor"), opposes withdrawing the reference. For the reasons stated herein, Defendants' motion to withdraw the reference is denied.

I.   **Factual Summary**

A brief review of the background for this case is necessary for analyzing the merits of the motion to withdraw.[1] In 2006, Defendant James Harrison ("J. Harrison") was a minority shareholder in the Debtor, which was in the business of providing specialized security services. Jeffrey Brinson ("Brinson") was the majority shareholder. Defendant Harrison Management and Consulting Group, LLC ("HMCG"), which was wholly owned and operated by Defendant Gary Harrison ("G. Harrison"), had a management services agreement with the Debtor under which HMCG was involved with Debtor's operations. In addition to this business arrangement, there was also a personal relationship between Brinson and the Harrisons.

The relationship between Brinson and the Harrisons eventually fractured, and in April 2006, the Debtor sought to terminate the services contract with HMCG. These developments led to protracted litigation with the Harrisons and HMCG making claims against Brinson and the Debtor, and *vice versa*. A settlement was eventually reached, evidently in June 2007. Brinson and the

---

[1] This factual history is obtained from the bankruptcy Complaint (Doc. 6-1) and Trustee's Response in Opposition to the Motion to Withdraw the Reference (Doc. 5), to which Defendants have not replied.

Debtor agreed to pay several million dollars to J. Harrison and HMCG with the money being conveyed in payments spread over eighty-four months. Brinson and the Debtor executed notes and guarantees in evidence of their indebtedness.

On April 12, 2012, the Debtor filed a voluntary bankruptcy petition under Chapter 11 of the bankruptcy code. At that time, some money was still owed to J. Harrison and HMCG under the settlement agreement with Brinson and the Debtor. In December 2012, Debtor's bankruptcy proceeding was converted to one under Chapter 7. In April 2014, Debtor's Trustee sued Defendants for recovery of payments made to them under the settlement agreement. Trustee's Complaint against Defendants alleged claims of insider preference avoidance, preference avoidance, fraudulent transfer, fraudulent transfer avoidance, recovery against immediate transferee, and recovery as transferee. (Complaint, Doc. 6-1, ¶¶33-57). Defendants answered the Complaint and requested a jury trial. They have not consented to having the jury trial in Bankruptcy Court. In addition to the claims against Defendants, Debtor's Trustee has also brought similar claims against fifteen other entities.

## II.   Legal Analysis

"Bankruptcy courts provide a special forum for debtors and creditors to reach prompt resolution of bankruptcy issues, with district courts serving in a supervisory and appellate capacity for bankruptcy courts." In re Security Bank

Corp., 5:10-MC-3, 2010 WL 2464966, at *2 (M.D. Ga. June 14, 2010); *see also* In re Parklane/Atlanta Joint Venture, 927 F.2d 532, 538 (11th Cir. 1991). "Motions to withdraw reference from the bankruptcy court under § 157(d) essentially only determine the forum in which final decisions will be reached." In re King Memorial Hosp., Inc., 767 F.2d 1508, 1510 (11th Cir. 1985). Thus, Defendants' motion seeks to have the issues in this case, including pre-trial matters, decided by this Court rather than the Bankruptcy Court.

Although § 157(d) addresses circumstances in which the district court's withdrawal of the reference might be either mandatory or permissive, Defendants only argue for the permissive withdrawal of the reference. The permissive withdrawal of a reference to bankruptcy court may only be done "for cause shown." 28 U.S.C. § 157(d). Even though Congress did not provide a definition for "cause," the Eleventh Circuit has noted that this is not "an empty requirement." In re Simmons, 200 F.3d 738, 741 (11th Cir. 2000) (citing In re Parklane, 927 F.2d at 536). District courts in this circuit have developed a number of factors for determining whether cause has been shown: "(1) uniformity and efficiency in the administration of bankruptcy law; (2) prevention of forum shopping; (3) conservation of parties' resources; … (4) facilitation of the bankruptcy process; … (5) whether the claim is core or non-core; (6) efficient use of judicial resources; (7) a jury demand; and (8) prevention of delay." Holmes v.

Grubman, 315 F. Supp. 2d 1376, 1381 (M.D. Ga. 2004) (internal citations omitted and numbering altered). Although the Eleventh Circuit "has not yet articulated criteria for determining the existence of cause for withdrawal," it has noted with approval the Fifth Circuit's instruction, in *dicta*, for district courts to utilize such factors in determining cause. In re Simmons, 200 F.3d at 742 (quoting In re Parklane, 972 F.2d at 536 n. 5).

In balancing these factors, the Court is convinced that the motion to withdraw the reference should be denied. As the Trustee readily notes, there are fifteen adversary proceedings in this bankruptcy case in addition to the one brought against Defendants. These other proceedings involve similar factual allegations and legal claims as those made against Defendants. Moreover, the Bankruptcy Court has a familiarity with and expertise in these sorts of issues that this Court lacks. Thus, allowing this matter to proceed in Bankruptcy Court would encourage uniformity in the bankruptcy proceedings, efficiently utilize judicial resources, and facilitate the bankruptcy process. Given the fact that Defendants have already answered the Complaint brought in Bankruptcy Court, the Court is also persuaded that there would be less delay and a greater conservation of the parties' resources if the adversary proceeding were not removed to this Court.

To the extent that the remaining factors are even relevant to this proceeding, they are insufficient to tilt the balance in favor of withdrawing the

reference. Both Trustee and Defendants recognize that the prevention of forum shopping is not a factor at play here. While the claims brought against Defendants appear to qualify this as a "core" proceeding under Title 11 of the bankruptcy code, *see* § 157(b)(2), the Court agrees with the Trustee that the Supreme Court's opinion in Stern v. Marshall, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), makes the factor of whether a proceeding is "core" or "non-core" much less significant. In Marshall, the Supreme Court held that even if § 157 defined a claim as a core proceeding, because bankruptcy judges are not appointed pursuant to Article III of the Constitution, they may not enter final judgment on such a claim if it arises from "the common law, or in equity, or admiralty." 131 S.Ct. at 2608-09 (quoting Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272, 18 How. 272, 284, 15 L.Ed. 372 (1856)). However, any final order entered by the Bankruptcy Court is subject to *de novo* review by this Court, so even if this Court determines that the Bankruptcy Court lacked constitutional authority to enter final judgment on a claim, any such order would be treated as a recommendation by the bankruptcy judge. *See* In re Williford, 222 F. App'x 843, 844 (11th Cir. March 13, 2007); Amended Standing Order of Reference for the United States District Court for the Middle District of Georgia (Feb. 17, 2012).

    Finally, the fact that Defendants have requested a jury trial does not convince the Court to withdraw the reference at this time. Section 157(d) only

6

permits bankruptcy judges to conduct jury trials "with the express consent of all the parties" to an adversary proceeding, and Defendants refuse to provide such consent. They contend that withdrawing the reference now would be more expeditious given that their requested jury trial can only occur in district court. The Court is not persuaded. Withdrawing the reference only after the Bankruptcy Court has handled pretrial matters and entered "findings of fact and recommendations of law on dispositive issues … is consistent with Congress's intent to let bankruptcy judges determine bankruptcy matters to the greatest extent possible." Ogier v. Johnson, No. 1:13-cv-01490, 2013 WL 6843476, at *6 (N.D. Ga. Dec. 27, 2013) (quoting In re Palm Beach Fin. Partners, L.P., No. 13-80102-CIV, 2013 WL 203616, at *4 (S.D. Fla. May 14, 2013)). The proceeding against Defendants will remain in Bankruptcy Court until their case is ready to go to trial.

### III. Conclusion

Defendants' Motion to Withdraw the Reference (Doc. 1) is denied, and this matter is dismissed from the district court.

**SO ORDERED**, this the 25th day of September, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr